DECISION
The defendant-appellant, David J. Cooper, appeals from the judgment entered upon a jury's verdict finding him guilty of operating a motor vehicle with a prohibited alcohol content in violation of R.C. 4511.19(A)(3). Cooper was sentenced to 180 days' confinement with 170 days suspended, one year of probation, and a fine of $300 and costs. He also received an administrative license suspension. He raises three assignments of error, each of which is predicated upon his principle argument that he was able to establish the affirmative defense that the vehicle he was accused of driving was inoperable. We disagree and thus affirm.
 THE FACTS
On August 1, 1998, at about 12:30 a.m., Cooper and his girlfriend, Tracey Schaeper, riding in her 1998 Ford Escort, collided with a parked truck on a residential street. A witness who had come out of his house immediately after hearing the sound of the collision testified that he saw the Escort's front end wedged under the truck, with a female, Schaeper, in the driver's seat. He testified that Schaeper started the engine and put it in reverse. Asked if the vehicle moved at all, he responded, "It jerked. I don't think it moved to the point where it could get unwedged from the truck."
The same witness testified that he then saw Schaeper and Cooper exchange places, with Cooper taking the wheel. He stated that Cooper put the car in reverse "and was trying to get it unwedged from the truck, also." The witness stated that Cooper was unsuccessful.
A second neighbor exited from his house at the sound of the collision. He testified that when he approached the accident scene, he saw Cooper behind the steering wheel of the Escort, "trying to basically move the car." Asked if Cooper had any "luck," the witness replied, "It [the Escort] may have moved two or three inches. It wasn't going very far." The witness stated also that when he first observed the Escort it was "already away from the truck." The witness explained this to mean that the Escort was not wedged underneath the truck but was situated "maybe five to six inches away from the bumper of the truck * * *."
When a deputy sheriff arrived on the scene approximately fifteen minutes later, Cooper and Schaeper both told him that Cooper had been the driver of the vehicle. After speaking to the witnesses, however, the deputy sheriff suspected that Schaeper had also been driving. Both Cooper and Schaeper appeared intoxicated; both were given field sobriety tests; both failed. Both were arrested and both were transported to the police station to be given an intoxilyzer test. Cooper's test produced a blood-alcohol content of .207. Schaeper refused to take the test.
At the station, Cooper recanted and told the deputy sheriff that Schaeper, who had two prior DUI convictions, was the driver. Schaeper denied that she had been driving. Both were charged with violations of R.C. 4511.19(A)(1) and (A)(3).
Schaeper and Cooper were tried jointly. Despite their antagonistic defenses, both were represented by the same defense counsel. At trial, Cooper admitted that he had been intoxicated. He testified that he and Schaeper had been at a social function where he drank to the point where he felt that it was necessary for Schaeper to be the driver on the way home. According to Cooper, Schaeper was driving at the time of the accident, and the only time he was behind the wheel afterward was during his futile attempt to dislodge the Escort. Cooper testified that when he put the vehicle in reverse, "it rocked a little from the force of the clutch being let out, but it didn't jerk or anything."
We have only a partial transcript and no docket entries relating to Schaeper. The verdict forms are missing. With respect to the (A)(1) charge, Cooper contends that he was acquitted by the jury; however, the transcript shows that, at the conclusion of the state's evidence, the trial court granted Cooper's Crim.R. 29 motion and dismissed this charge while overruling his motion as to the (A)(3) charge. The trial court's judgment entry in its journal indicates only that the jury returned a verdict of guilty on the (A)(3) charge.
 OPERABILITY
In his first assignment of error, Cooper maintains that the jury erred by failing to find that he had established the affirmative defense of inoperability. He argues that despite his admission that he was intoxicated, he could not have been found guilty of operating the Escort while intoxicated because the weight of the evidence demonstrated that the Escort was rendered immobile as a result of the accident. We disagree.
Writing for the majority in State v. Mackie (1998),128 Ohio App.3d 167, 714 N.E.2d 405, Judge Doan discussed at length the case law concerning "opera[bility]" as an element of R.C. 4511.19(A)(1) and (A)(3). The majority held that operability is a question of fact that turns on the driver's ability to cause actual or possible movement of the vehicle. Id. at 170-171,714 N.E.2d at 407. Inoperability is a defense for which the defendant has the burden of proof by a preponderance of the evidence. Id.
at 170, 714 N.E.2d at 407. The central consideration is the possible hazard to another on the highway. As the Ohio Supreme Court has stated, the legislative purpose focuses on the possibility as well as the realization of harm:
 A clear purpose of R.C. 4511.19 is to discourage persons from putting themselves in the position in which they can potentially cause the movement of a motor vehicle while intoxicated or under the influence of any drug of abuse. * * * Prohibition of potentially harmful conduct need not await the occurrence of the act.
State v. Gill (1994), 70 Ohio St.3d 150, 154, 637 N.E.2d 897,900. As Judge Doan observed in Mackie, the cases concerning operability tend to be fact-specific, focusing on the defendant's conduct and "his or her ability to cause `actual or potential movement' of the motor vehicle while under the influence of alcohol." Mackie, supra, at 178, 714 N.E.2d 407, quoting State v.Schrader (1997), 118 Ohio App.3d 221, 224, 692 N.E.2d 628, 631. In those cases in which it is alleged that the automobile was mechanically incapable of movement, it is the defendant's burden to establish (1) that the vehicle was inoperable, (2) that the defendant did not operate the vehicle prior to it becoming disabled, and (3) that the vehicle's mechanical problems were such that it could not under any circumstances have been operated by the accused. Mackie, supra, at 171, 714 N.E.2d at 407.
Conflicts in the evidence, including the credibility of the witnesses, are primarily for the trier of fact to resolve. Statev. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. It was within the jury's province in this case to determine if Cooper had operated the vehicle, or, conversely, if he had met his burden and established by a preponderance of the evidence the affirmative defense of inoperability. The jury weighed the evidence and determined that Cooper had failed to demonstrate under the circumstances that the Escort was immovable. After reviewing the record and sitting as a "thirteenth juror," we cannot conclude that, in reaching this conclusion, the jury lost its way and created such a miscarriage of justice that we must reverse the conviction and order a new trial. See State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 546-547.
The record offers no reason that would have necessarily precluded the jury from finding that Cooper was the driver of the Escort at the time of the collision, based upon his admission to the deputy at the scene. Even, however, if the jury chose to believe that Schaeper was driving at the time of the accident, the evidence did not necessarily preponderate that when Cooper exchanged places with her to try to dislodge the Escort, the automobile lacked the ability to move under its own power. See Mackie at 171,714 N.E.2d at 407-408. Cooper's conduct in attempting to disengage the Escort from the truck by accelerating in reverse created a legitimate issue as to the vehicle's potential for movement. The evidence established that the tires were not flat and that the vehicle had power. As noted, one witness testified that the Escort jerked; another witness testified that the Escort moved five to six inches. Significantly, the second witness testified that when he saw the Escort it was no longer entangled with the truck, clearly indicating that the car had been moved.
The jury was entitled, therefore, to base its finding on "evidence showing that [the Escort] could be rocked or moved, even slightly." Id. at 173, 714 N.E.2d at 409. Accordingly, the jury's verdict was not against the manifest weight of the evidence. As one authority on the subject has noted, the cases in which the vehicle is rendered completely immobile because of mud, ice, or snow, usually off the highway, are factually distinguishable from the cases in which the driver claims the vehicle is immobile because of a mechanical problem. See Painter,Ohio Driving Under the Influence Law (1999 Ed.), Section 110, 22-23. As that authority states, "Although no case law is known to exist, it is possible that a defendant's conduct in attempting to activate or start a vehicle or in accelerating [a] stationary, although immovable vehicle could constitute an attempt to commit the offense of operating a vehicle under the influence of alcohol, drug of abuse, or with a prohibited alcohol level." Id. at 23.
 SUFFICIENCY OF THE EVIDENCE
Cooper's argument that the trial court erred in denying his Crim.R. 29 motions for acquittal at the close of the state's evidence and after the verdict is, likewise, without merit. Pursuant to a Crim.R. 29 motion, the court must construe all evidence in a light most favorable to the state. State v. Evans
(1992), 63 Ohio St.3d 231, 248, 586 N.E.2d 1042, 1056, certiorari denied (1992), 506 U.S. 886, 113 S.Ct. 246. A trial court may not order a judgment of acquittal "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, syllabus. Despite conflicting statements in this case, reasonable minds could have found beyond a reasonable doubt that the state had offered competent evidence to prove the element of operability.
 JURY INSTRUCTIONS
In his third assignment of error, Cooper argues that the order in which the trial court read the definitions for "operate" and "inoperability" in its instructions confused the jury by leaving the impression that the affirmative defense of inoperability applied to the R.C. 4511.19(A)(1) charge, but not to the R.C.4511.19(A)(3) charge. Cooper tendered the instructions on operability and inoperability used by the trial court. He made no objection to the order of the instructions in the trial court and raises this issue for the first time on appeal. Absent plain error, the failure to object to the jury instructions under Crim.R.30 is a waiver of the claim of error on appeal. State v.Underwood (1983), 3 Ohio St.3d 12, 444 N.E.2d 1332, syllabus. Even if the waiver doctrine is inapplicable here, we are not persuaded that the order of the instructions was error, or that, if it was, the outcome of the trial clearly would have been otherwise had they been given in the order now suggested by Cooper.
 CONCLUSION
Accordingly, Cooper's three assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
 DOAN, P.J., GORMAN and SHANNON, JJ.
RAYMOND E. SHANNON, retired, from the First Appellate District, sitting by assignment.